IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

PEOPLES BANK, National Association,

               Plaintiff/Appellee,

v.                                     CIVIL ACTION NO.  3:22-0448

DENNIS RAY JOHNSON, II,

               Defendant/Appellant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Dennis Ray Johnson II's appeal of an Order by the U.S. Bankruptcy Court for the Southern District of West Virginia, which dismissed his Second Amended Complaint. Def.'s Notice of Appeal and Statement of Election, ECF No. 1. For the reasons below, the Court **AFFIRMS** the decision of the Bankruptcy Court and **DISMISSES** this action without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.*

## I.     BACKGROUND

The instant bankruptcy action arose on May 9, 2016, when Mr. Johnson filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code, Case No. 3:16-BK-30227. Order Granting Mot. to Dismiss ¶ 2, ECF No. 1-1. Mr. Thomas Fluharty was appointed as the Chapter 11 Trustee pursuant to an Order entered on November 7, 2016. *Id.* ¶ 3. Mr. Fluharty was also appointed as the Chapter 11 Trustee in sixteen related coal enterprise cases, fifteen of which were administratively consolidated the same day Mr. Fluharty was appointed. *Id.*

Shortly thereafter, on December 30, 2016, Peoples Bank initiated an adversary proceeding against Mr. Johnson, Case No. 3:16-AP-03020 (the AP Case), in which they asked the Court to determine that certain debts were not dischargeable and to deny Mr. Johnson a discharge. *Id.* ¶ 4.

The parties entered into a Stipulation to Resolve Adversary Proceeding (Stipulation) in September of 2019 whereby Mr. Johnson agreed to a $4 million nondischargeable judgment in favor of Peoples Bank. *Id.* ¶ 5. Additionally, the parties agreed to the following terms, in pertinent part:

12. Johnson shall provide Complete Cooperation[2] in good faith, in causes of action conveyed by the Trustee to Peoples Bank pursuant to this Court's Sale Order dated _____ [Doc _____] and in the Adversary Proceeding filed by Peoples Bank, et al. against Vitol Americas Corp., et. al. at case number 3:18-ap-03006 (collectively, the "Litigation").

13. If Johnson provides Complete Cooperation in the Litigation under an objective standard, as discussed *supra*, as requested by Plaintiff(s), the Judgment shall be reduced to $2,000,000 (less any money/consideration received by Peoples Bank in the Litigation) and released after four (4) years from the date the judgment is recorded.

14. It being understood that the goal and objective of the parties is a successful result in the Litigation that produces a recovery for the Bank, and for Johnson to receive a reduction in amount and duration of such Judgment.

15. Johnson shall receive a dollar for dollar reduction of the Judgment for money or other consideration actually received by the Bank from the Litigation. Success or a particular result favorable to Plaintiff(s) in the Litigation shall not impact the analysis of Johnson's Complete Cooperation. Complete Cooperation in the Litigation shall be determined by a three-person panel ("Panel").

16. Thomas Fluharty, Kevin Garvey and a third person mutually agreeable to the parties shall serve on the Panel. Majority vote by the Panel shall control. An affirmative vote will not be unreasonably withheld.

. . .

20. Voting by the Panel shall occur at the earlier of (i) 14 days after the conclusion of the Litigation or (ii) 4 years from the date the Judgment is recorded. Peoples Bank shall notify the Panel and Johnson of the conclusion of the Litigation. In the event the Litigation is still pending when the vote is taken, Complete Cooperation shall be assessed on the basis of whether it has been provided up to the date of the vote.

21. Johnson agrees to continue to provide Complete Cooperation in pending Litigation even after an affirmative vote of cooperation.

*Id.* ¶ 5 (quoting Stipulation ¶¶ 12-16, 20-21, ECF No. 2-3).

Footnote 2 of the Stipulation defines "Complete Cooperation" as:

Johnson willingly providing assistance as reasonably requested by Plaintiff(s) in: (i) sitting for deposition(s) on topics relevant to the Litigation, (ii) providing Plaintiffs with case analysis relevant to topics relevant to the Litigation, (ii) providing Plaintiffs with case analysis relevant to the Litigation and aimed at maximizing recovery within a reasonable period of time from the request, (iii)

> providing documents, witnesses, information or location of documents and
> information relevant to the Litigation as requested within a reasonable period of
> time from the requests, and (iv) testifying at trial as needed on matters relevant to
> the Litigation and, to extent possible, in a manner that is aimed at producing a
> favorable result for the Plaintiffs.

*Id.* ¶ 7 (quoting Stipulation ¶ 12 n.2, ECF No. 2-3). The Stipulation further provides that "[t]he

Bankruptcy Court shall retain jurisdiction to determine any dispute over the interpretation or

enforcement of this Order." *Id.* ¶ 8 (citing Stipulation ¶ 25, ECF No. 2-3).

The Court's Sale Order sets forth the causes of action conveyed to Peoples Bank, further

defining the "Litigation" in which Mr. Johnson agreed to provide Complete Cooperation. *Id.* ¶ 6.

The Asset Sale and Purchase Agreement (ASPA) attached to the Trustee's Sale Motion describes

the "Purchased Assets" as follows:

> 1. All rights, title and interest of the Johnson Estate in the Noble Litigation [A.P.
>    No. 18-03006] together with any and all profits, rights, interests, proceeds,
>    properties and assets related or associated therewith . . .
> 2. All rights, title and interest of the jointly administered Debtors, in all claims,
>    causes of action and rights to payment, excluding the Noble Litigation and the
>    Fraudulent Transfer Action [A.P. No. 18-3005], together with any and all
>    profits, rights, interests, proceeds, properties and assets related or associated
>    therewith . . .
> 3. All assets and causes of action held by the Sabbatical Estate, including all rights,
>    title and interest, in all causes of action, excluding the Noble Litigation, together
>    with any and all profits, rights, interests, proceeds, properties and assets related
>    or associated therewith . . . . The following assets held by the Sabbatical Estate
>    are excluded from this sale: the Noble Litigation, the Fraudulent Transfer
>    Action against Denise Johnson, et al., cash held by the Trustee, and the unpaid
>    judgment against Dewey Webb (the "Excluded Sabbatical Assets.") . . . [T]hese
>    assets shall, unless Peoples Bank's selects a different assignee/designee, be
>    immediately assigned by the Trustee to the Sabbatical Plan administrator to be
>    liquidated for the sole benefit of Peoples Bank.

*Id.*

The Stipulation was subsequently incorporated by reference into a Consent Judgment

entered shortly thereafter. *Id.* ¶ 9 (citing Consent Judgment, ECF No. 2-4). In sum, the Stipulation

and the Consent Judgment provided that should Mr. Johnson provide Complete Cooperation as

defined by the Stipulation and determined by the Panel, his $4 million dollar consent judgement would be reduced by $2 million dollars. Stipulation ¶¶ 7, 12-13, ECF No. 2-3. The Stipulation also provides that Mr. Johnson would receive a dollar-for-dollar reduction for money or consideration received by Peoples Bank from the Litigation. *Id.* ¶ 15. Mr. Johnson's personal bankruptcy case, as well as several related cases, were converted to Chapter 7 on March 30, 2020. Order Granting Mot. to Dismiss ¶ 10, ECF No. 1-1. The Vitol Litigation concluded via a stipulated order of dismissal approximately one month later, on April 13, 2020. *Id.* ¶ 11. The AP Case was closed on June 15, 2020, and Mr. Johnson's bankruptcy case was closed on September 10, 2020. *Id.* ¶¶ 12-13.

More than two months after his personal bankruptcy case was closed, on November 18, 2020, Mr. Johnson sent an email to Peoples Bank seeking their agreement that he had provided Complete Cooperation as defined by the Stipulation. *Id.* ¶ 14; Nov 18, 2020 Email, ECF No. 2-11 at 232-33. Peoples Bank responded to this request in a letter dated November 23, 2020. *Id.* ¶ 15; Letter from Kirk B. Burkley to Dennis Johnson, ECF No. 2-13 at 22-23 (Burkley Letter). In it, Peoples Bank, via attorney Kirk B, Burkley, stated the following: 1) it did not believe that Mr. Johnson had provided "Complete Cooperation" and was thereby giving Mr. Johnson notice that it would proceed with the three-person panel, 2) because the third, previously-agreed-upon panel member had since been appointed to the bench for the United States Bankruptcy Court for the Northern District of West Virginia, Peoples Bank proposed that the United States Trustee's office designate another staff member in his place, 3) Peoples Bank believed Mr. Johnson was entitled to an offset in the Consent Judgment of $1,067,004.74, the alleged net recovery in Peoples Bank's $3.21 million settlement with the Sabbatical Estate, and 4) that Peoples Bank believed that the

amount due on the judgment was $2,932,995.26 and that it intended "to proceed with enforcement of that judgment pursuant to its terms." Burkley Letter, ECF No. 2-13 at 22-23.

In an email dated November 24, 2020, Mr. Johnson responded that he disagreed with the assertions in the Burkley Letter. Nov 24, 2020 Email, ECF No. 2-11 at 235; Order Granting Mot. to Dismiss ¶ 16, ECF No. 1-1. He also proposed that Gary Kinder act as the third person on the panel and expressed a desire "to address the panel and supply information" to show he had provided Complete Cooperation under the Stipulation. *Id.* Five days later, in an email dated November 29, 2023, Mr. Johnson followed up to retract his proposal for another panel member, as he thought "the panel was supposed to meet within 14 days" and "just disagree[d] with the way it was handled." Nov. 29, 2020 Email, ECF No. 2-11 at 237; Order Granting Mot. to Dismiss ¶ 17, ECF No. 1-1.

The next day, on November 30, 2020, Mr. Johnson filed an action in the Southern District of West Virginia. Compl., *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 1. Three months after Mr. Johnson had filed the Complaint, on February 23, 2021, Peoples Bank sent him a letter requesting his cooperation in two additional matters—namely, the Bank asked that he turn over certain documents and meet with Peoples Bank counsel within ten and twenty-one days, respectively. Letter to J. William St. Clair from John J. Richardson, ECF No. 2-13 at 31-33 (Richardson Letter).

The Complaint was subsequently amended twice, once on March 11, 2021 and then again on May 4, 2021. *Johnson v. Peoples Bank*, No. 3:20-00781, ECF Nos. 11, 21. The Second Amended Complaint asked that the Court:

1) determine and declare that the Bankruptcy Court lacks jurisdiction to interpret and enforce the Stipulation;

2) determine and declare that because Peoples Bank failed to notify Mr. Johnson and the panel within fourteen days of litigation concluding, the panel should be estopped or otherwise prevented from contesting that Mr. Johnson provided Complete Cooperation;

3) determine and declare that pursuant to the ASPA, Mr. Johnson should receive a dollar-for-dollar credit in the amount of $2,270,754.74;

4) determine and declare that Mr. Johnson has complied with the Stipulation in good faith, and require Peoples Bank to file a release and satisfaction of the judgment;

5) determine and declare that Peoples Bank is estopped from requesting additional cooperation from Mr. Johnson due to his detrimental reliance on the February letter;

6) hold an evidentiary hearing, and thereafter determine and declare that Peoples Bank acted in bad faith, vexatiously, wantonly, or for oppressive reasons, making them liable for Mr. Johnson's attorneys' fees and costs; and

7) declare that Peoples Bank violated the West Virginia Consumer Credit Act, W. Va. Code § 46A-2-127, making them liable for any relief recoverable under the Act.

Second Am. Compl., *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 21. Namely, Mr. Johnson alleges that Peoples Bank acted in bad faith by, *inter alia*, failing to timely notify him at the conclusion of litigation, providing an incorrect accounting of the Vitol proceeds, and adopting an inconsistent position as to his Complete Cooperation only after Mr. Johnson filed an action in this Court. Order Granting Mot. to Dismiss ¶ 20, ECF No. 1-1. The Court later granted Mr. Johnson's motion to strike Count VII, which alleges a violation of the West Virginia Consumer Credit Act. *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 28.

Peoples Bank moved to dismiss the Second Amended Complaint on June 1, 2021, arguing that 1) it should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because it raised

matters that were not ripe, and 2) it should be dismissed for failure to state a claim under Rule 12(b)(6) because certain releases and agreed injunctions in the bankruptcy case estopped Mr. Johnson from bringing this action. Mot. to Dismiss, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 22; Mem. of L in Supp. of Peoples Bank's Mot. to Dismiss, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 23. Alternatively, Peoples Bank argued that the matter should be referred to the Bankruptcy Court pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule of Civil Procedure 83.13. Mem. of L in Supp. of Peoples Bank's Mot. to Dismiss at 16-18, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 23. In his Response, Mr. Johnson argued that 1) the matters were ripe for review, 2) the instant action did not violate any order, 3) the case did not "arise in or relate to" a bankruptcy proceeding, and 4) the provision retaining jurisdiction did not constitute a court order. Pl.'s Resp. to Def.'s Mot. to Dismiss, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 24.

In a Memorandum Opinion and Order dated January 14, 2022, this Court granted Peoples Bank's Motion to Dismiss. *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 29. This Court held that because the Consent Judgment incorporated the Stipulation by reference, the Bankruptcy Court had appropriately exercised and expressly retained jurisdiction over the dispute. *Id.* at 6. Referral to the Bankruptcy Court was proper because the outcome of the case "may affect proceedings in another, related case currently before the Bankruptcy Court," the Bankruptcy Court was well-equipped to manage the claims, and the claims almost entirely involved an interpretation of the Bankruptcy Court's own order. *Id.*

Pursuant to this Court's Order, the Bankruptcy Court reopened the AP Case on January 25, 2022. Order, ECF No. 2-5. In May of 2022, Mr. Johnson submitted a memorandum in advance of a hearing later that month in which the Bankruptcy Court would consider a motion to dismiss filed

by Peoples Bank. Def.'s Pre-Hr'g Mem. at 1, ECF No. 2-7. In it, Mr. Johnson argued that 1) the matters before the Bankruptcy Court were ripe because Peoples Bank was continuing Litigation sans his cooperation, 2) no additional cooperation should be required from Mr. Johnson, 3) the Vitol and Noble accounting was ripe for consideration, and 4) additional discovery was needed to determine why the Richardson Letter requested additional cooperation from Mr. Johnson, as well as to "trace the flow of sums" to determine how much Peoples Bank received from the Vitol and Noble settlement. *Id.* In response, Peoples Bank moved to strike Mr. Johnson's Pre-Hearing Memorandum because it invited the Bankruptcy Court to improperly consider matters outside of the pleadings in ruling on the motion to dismiss. Peoples Bank's Mot. to Strike and Resp. to Pl.'s Pre-Hr'g Mem. ¶¶ 13-19, ECF No. 2-8. At the hearing, the Bankruptcy Court denied Peoples Bank's Motion to Strike, took Peoples Bank's Motion to Dismiss under advisement, and noted that it would give appropriate weight to the Pre-Hearing Memorandum when ruling on the motion to dismiss. Order Granting Mot. to Dismiss ¶ 25, ECF No. 1-1.

The Bankruptcy Court granted Peoples Bank's Motion to Dismiss in a Memorandum Opinion and Order dated October 3, 2022. *Id.* In it, the Bankruptcy Court held that Mr. Johnson had not met his burden to show ripeness, as the Litigation had not yet concluded and the panel had not even convened, much less reached a decision as to Mr. Johnson's Complete Cooperation. *Id.* ¶¶ 38-39. In so holding, the Bankruptcy Court pointed to the Stipulation, which provides both that Complete Cooperation "shall be determined by a three-person panel" and that Mr. Johnson "shall provide" Complete Cooperation in the Litigation. *Id.* ¶ 40. The Bankruptcy Court also concluded that Litigation, as defined by the Stipulation, had not yet concluded, as it had been defined in an expansive manner to include the Vitol and Noble Litigation and all causes of action in the Sabbatical estate, among others. *Id.* ¶ 41. Finally, the Bankruptcy Court reasoned that Peoples

Bank had not pursued execution of the Consent Judgment and that the Burkley Letter was " a response to Mr. Johnson's request for a position statement . . . not an act in violation of Peoples Bank's duty to forbear pursuant to the Stipulation." *Id.* ¶ 42. Accordingly, Mr. Johnson would not be harmed or burdened by awaiting the Panel's decision on Complete Cooperation before pursuing judicial review. *Id.* ¶ 43.

In his appeal, Mr. Johnson asks that this Court "determine that [his] claims are ripe, reverse the Bankruptcy Court's decision, withdraw the referral to the Bankruptcy Court, and allow this case to proceed before this Court for final disposition." Appellant's Br. at 11, ECF No. 3. In doing so, he raises four issues: 1) whether the Bankruptcy Court erred in determining that the accounting of credit from the Vitol Settlement was not ripe for consideration, 2) whether the Bankruptcy Court erred in inferring against Mr. Johnson without allowing him to conduct discovery, 3) whether the Bankruptcy Court failed to address Mr. Johnson's waiver and estoppel claims, and 4) whether the Bankruptcy Court had authority to enter the judgment pursuant to Article III of the Constitution. *Id.* at 2. Below, the Court addresses each of these issues in turn.

## II.    LEGAL STANDARD

District courts have jurisdiction to review appeals "from final judgments, orders, and decrees" of bankruptcy courts in the same judicial district. 28 U.S.C. § 158(a). When confronted with an appeal from the bankruptcy court, district courts review any factual findings for clear error, any questions of law de novo, and any exercise of discretion for abuse thereof. *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *George Jr. Republic in Pa. v. Williams*, No. 07-4537, 2008 WL 763304, at *2 (E.D. Pa. Mar. 19, 2008) (citing *IRS v. Pransky*, 318 F.3d 536, 542 (3d Cir. 2003)). Any mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003) (citing *Carter Enters. v. Ashland Specialty Co.*, 257 B.R. 797, 800 (S.D.W. Va.

2001)). "On appeal, the district court may only consider the evidence which was presented to the bankruptcy court and made part of the record." *In re Bell*, 507 B.R. 898, 902 (S.D.W. Va. 2014) (citing *In re Computer Dynamics*, Inc. 253 B.R. 693, 697 (E.D. Va. 2000)).

Because this matter centers on ripeness, the Court analyzes it pursuant to Federal Rule of Civil Procedure 12(b)(1), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(b)(1) requires that an action be dismissed if the court lacks subject-matter jurisdiction. A party may challenge subject-matter jurisdiction factually or facially. *In re Sheppard*, No. 2:16-AP-02049, 2017 WL 690927, at *2 (Bankr. S.D.W. Va. Feb. 21, 2017) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). A challenge is factual when it asserts that jurisdictional allegations in the complaint are untrue. *Id.* In the event of a factual challenge, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Stahlman v. United States*, 995 F. Supp. 2d 446, 451 (D. Md. 2014)).

A challenge is facial when it asserts that allegations in the complaint are insufficient to establish subject matter jurisdiction. *Id.* (citing *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999)). In reviewing facial challenges, district courts take "the facts alleged in the complaint . . . as true," denying the motion "if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. Here, the Bankruptcy Court treated Peoples Bank's motion to dismiss as a facial attack, as it relied on the Richardson Letter in holding that litigation had not yet concluded and the letter had been attached as an exhibit to the Second Amended Complaint. Appellant's Br. at 22, ECF No. 3; Appellee's Br. at 14, ECF No. 4. The Court will therefore review the attack as a facial one.

-10-

## III.   DISCUSSION

A.  Given that the Litigation is still ongoing, the Bankruptcy Court did not err in determining that the accounting of credit from the Vital Settlement was not ripe for consideration.

Mr. Johnson first argues that the allegedly incorrect accounting in the Burkley Letter is ripe for consideration. Appellant's Br. at 22-25, ECF No. 3. This issue is contained in Count III of the Second Amended Complaint, which alleges that the dollar-for-dollar accounting described in the Burkley Letter was inconsistent with the terms of the ASPA. Second Am. Compl. ¶¶ 41-46, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 21. In its order granting Peoples Bank's motion to dismiss, the Bankruptcy Court found that

> Complete Cooperation, or lack thereof, and [] accounting of Mr. Johnson's dollar-for-dollar reduction pursuant to the Stipulation . . . are not "presented in a clean-cut and concrete form" and remain contingent on future uncertainties because the Litigation has not yet concluded and the Panel has not yet reached a decision on Mr. Johnson's Complete Cooperation.

Order on Mot. to Dismiss ¶ 39, ECF No. 1-1.

Here, Mr. Johnson argues that because the Bankruptcy Court "determined the accounting was in some way contingent upon or linked to" the Complete Cooperation, it "did not address separately and specifically whether the accounting claim was, itself, ripe for consideration. Appellant's Br. at 23, ECF No. 3. He claims that the issue is ripe because the Vitol case settled more than two years ago and delaying adjudication on this issue does not serve any party's interests. *Id.* at 24-25. Peoples Bank responds that 1) Mr. Johnson provides no legitimate basis for why the accounting was improper, 2) Mr. Johnson has incurred no injury sufficient to establish ripeness, and 3) the dollar-for-dollar accounting is dependent on the determination of Complete Cooperation. Appellant's Br. at 16-17, ECF No. 4.

The accounting issue is not ripe. The doctrine of ripeness arises from the case or controversy requirement of Article III of the Constitution. *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (citations omitted). Underlying the doctrine is the "basic rationale . . . to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). Because they comprise a Constitutional limitation on the jurisdiction of federal courts, courts review questions of ripeness *de novo*. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted).

When determining whether a certain dispute is ripe, courts must consider the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013). An issue is fit for judicial decision "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Ballantyne Vill. Parking, LLC v. City of Charlotte*, 818 F. App'x 198, 202 (4th Cir. 2020) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013)). Hardship is "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992) (citation omitted). Accordingly, a case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted). The party seeking jurisdiction bears the burden of establishing ripeness. *Id.*

Because Litigation is still ongoing, the issue of the accounting is not ripe. In its Order granting Peoples Bank's motion to dismiss, the Bankruptcy Court noted that Mr. Johnson had not

refuted that Litigation, "as defined in the Stipulation, Sale Order, and ASPA" was still ongoing. Order on Mot. to Dismiss ¶ 41, ECF No. 1-1. Likewise, in the instant briefing before the Court, Mr. Johnson does not refute that Litigation is ongoing. He instead argues that 1) the accounting is not contingent upon or linked to Complete Cooperation, 2) his dispute with the accounting in the Burkley Letter is well-founded, and 3) further delaying adjudication on this issue is contrary to the party's interests. Appellant's Br. at 23-24, ECF No. 3.

These arguments miss the point. First, the issue of the accounting can—and does—lack ripeness, regardless of whether it is contingent upon or linked to the determination of Complete Cooperation. This is because the accounting is contingent upon or linked to the pendency of the Litigation. As the Stipulation lays out, the accounting hinges on the "money or other consideration actually received by the Bank from the Litigation." Stipulation ¶ 15, ECF No. 2-3. In his Reply, Mr. Johnson alternatively argues that Litigation need not conclude for the accounting issue to be ripe. Appellant's Reply at 8, ECF No. 5. In doing so, he contends that both the Bankruptcy Court and Peoples Bank improperly assume that there can only be one accounting and that they otherwise fail to state the reason for imposing such a limitation. *Id.*

Insofar as he argues for piecemeal litigation, Mr. Johnson ignores longstanding caselaw—the Fourth Circuit has repeatedly held that an issue lacks ripeness "where an injury is contingent upon a decision to be made by a third party that has not yet acted." *Doe*, 713 F.3d at 758 (listing cases). Here, the final accounting hinges on a decision by Peoples Bank, a decision they have not yet made. While Peoples Bank gave some indication as to how it planned to account for the Vitol settlement, there is still more litigation for which accounting could occur. The prospective future accounting makes the injury Mr. Johnson presents wholly speculative—it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *South Carolina v.*

*United States*, 912 F.3d 720, 730 (4th Cir. 2019) (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013)). In sum, Mr. Johnson has failed to show that the accounting issue is fit for judicial decision. The action in controversy is not yet final and remains dependent on future uncertainties.

Mr. Johnson's second argument is similarly immaterial to the ripeness inquiry. The parties devote much of their briefing to the issue of whether the accounting in the Burkley Letter comports with the formula for accounting laid out in the ASPA. Appellant's Br. at 24, ECF No. 3; Appellee's Br. at 15-16, ECF No. 4; Appellant's Reply at 5-7, ECF No. 5. The ripeness inquiry, however, does not center on the merits of a particular suit, but rather on *when* it is proper for a plaintiff to bring suit. *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) (quoting *South Carolina*, 912 F.3d at 730) ("While standing involves 'the question[] of *who* may sue,' ripeness involves '*when* they [may] sue.'"); *see also Scoggins*, 718 F.3d at 267 (vacating a district court's holding on the merits of an issue because the claim was not yet ripe). Whether the accounting in the Burkley Letter was correct is a question to be addressed only when the issue is ripe for adjudication.

Mr. Johnson's third argument also lacks merit. In it, he seems to contend that he has met the "hardship" prong of the ripeness inquiry, arguing that "[d]elay of the accounting is in no one's interest because, over time, memories of parties and witnesses can fade or become distorted, evidence may disappear, and the ability of the parties to defend themselves is impaired." Appellant's Br. at 24-25, ECF No. 3. In his Reply, Mr. Johnson also points out both that "knowing whether he owes now $2.9 million or $1.6 million is important to [him] and will be important to the three-person panel" and that "[n]either the Bankruptcy Court nor the Bank articulate why delaying the accounting . . . is disadvantageous." Appellant's Reply at 10, ECF No. 5.

These arguments are not sufficient to meet the hardship prong of the ripeness inquiry. Hardship is "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank*, 976 F.2d at 208-09. Here, Mr. Johnson has not demonstrated that he will bear much, if any, burden from having to wait for the issue to ripen. That resolving an issue would be "important" or "advantageous" to a party does not imply an immediate threat or a significant burden. Further, even if Mr. Johnson could meet the hardship prong, he still would not be able to meet the first prong of the ripeness inquiry—that the issue is fit for judicial decision. *Simonton Bldg. Prod., Inc. v. Johnson*, 553 F. Supp. 2d 642, 650 (N.D.W. Va. 2008) (quoting *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1581 (Fed.Cir. 1993)) (finding that the court need not reach the hardship prong because the plaintiff failed to meet the first prong of the ripeness test).

Finally, the Court rejects Mr. Johnson's argument that the Bankruptcy Court did not "separately and specifically" address the issue of the accounting in its Order. Appellant's Br. at 23, ECF No. 3; Appellant's Reply. at 9, ECF No. 5. The Bankruptcy Court clearly laid out that the accounting issue was not ripe because it was not presented "in a clear-cut and concrete form" and remained contingent on future uncertainties—namely, the ongoing nature of Litigation and the convening of the Panel. Order on Mot. to Dismiss ¶ 39, ECF No. 1-1. The Court agrees with the holding of the Bankruptcy Court. Given that Litigation is still ongoing, Mr. Johnson has failed to show that the accounting issue is ripe for consideration.

B. The Bankruptcy Court did not make any improper inferences or err in dismissing the Amended Complaint without allowing Mr. Johnson to conduct discovery.

Next, Mr. Johnson argues that the Bankruptcy Court erred by inferring against him regarding the intent and meaning of the Burkley Letter and by failing to allow him to conduct additional discovery. Appellant's Br. at 25, ECF No. 3. First, he argues that the Bankruptcy Court

improperly inferred against him in rejecting his "gotcha" argument, that is, that the Burkley Letter implied that Litigation had concluded. *Id.* at 25-28. Second, he argues that the Bankruptcy Court improperly construed a "vague or ambiguous" phrase in the Burkley Letter—that Peoples Bank would "proceed with the enforcement of that judgment pursuant to its terms"—without allowing Mr. Johnson to conduct any discovery as the meaning or intent behind it. *Id.* at 28-29. Peoples Bank responds that the Court is only required to draw reasonable inferences, and the inference that Litigation had concluded is not reasonable. Appellee's Br. at 18, ECF No. 4.

In reviewing the Bankruptcy Court's ruling on the motion to dismiss, the Court "must assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations omitted). It need not, however, "accept the legal conclusions drawn from the facts . . . [or] accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). "[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Likewise, the Fourth Circuit has instructed that courts reviewing ripeness can consider "factual developments that occurred after the complaint was filed to determine whether [the plaintiff]'s claims were ripe for review at the time of the . . . judgment." *Wild Va.*, 56 F.4th at 293-94 (quoting *Whitaker v. Monroe Staffing Svcs., LLC*, 42 F.4th 200, 208 (4th Cir. 2022)). Accordingly, this Court must determine whether Mr. Johnson had shown that his claims were ripe at the time of the Bankruptcy Court's decision, "or if not, whether [he has] pointed to subsequent

factual developments that justify remanding the case for further factfinding related to ripeness."
*Id.* (listing cases).

Upon *de novo* review, the Court concludes that Mr. Johnson has neither shown his claims were ripe at the time of the Bankruptcy Court's decision, nor that subsequent factual developments justify remanding the case for further factfinding. Mr. Johnson cites two reasons the Bankruptcy Court should have found it reasonable for him to infer that Litigation had concluded: 1) the Burkley Letter mentioned convening the Panel, which under the Stipulation, was to convene at the conclusion of Litigation or four years after judgment was entered, and 2) the Burkley Letter did not request additional cooperation from Mr. Johnson. Appellant's Reply at 12-13, ECF No. 5.

Mr. Johnson misses the point—his reasonableness in inferring that Litigation had concluded does not bear on the ripeness of the claims he raises.  This Court, and the Bankruptcy Court, can properly consider factual developments—such as the Richardson Letter—that occurred after the Complaint was filed to determine that Litigation had not concluded.  *Wild Va*, 56 F.4th at 294. Moreover, in reviewing the appeal, this Court examines ripeness at the time the Bankruptcy Court granted to motion to dismiss. *Id.* Mr. Johnson's subjective beliefs at the time he filed the Complaint, whether reasonable or unreasonable, do not change the fact that Litigation had not yet concluded, the Panel had not yet convened, and Peoples Bank had not sought to collect the Judgment at the time the Bankruptcy Court dismissed the case. Where, as here, the disagreement remains abstract, adjudication is improper.

Likewise, Mr. Johnson spends much time trying to refute the Bankruptcy Court's characterization of his alleged "gotcha" argument, as well as attempting to justify filing this action. Appellant's Br. at 25-28, ECF No. 3. Confusingly, he argues that Peoples Bank failed to abide by the terms of the Stipulation because it did not notify Mr. Johnson or the Panel within fourteen days

of the Vitol case settling. *Id.* at 29 (citing Stipulation ¶ 20, ECF No. 2-3). He asserts that the appropriate remedy for this failure is "to treat the delay as a waiver of its right to convene the Panel, with Johnson being deemed to have provided Complete Cooperation and the $2 million due for that cooperation." *Id.* However, as discussed in Section III.A., *supra*, the Stipulation and ASPA define Litigation broadly, such that it encompasses more than just the Vitol litigation. Peoples Bank, therefore, cannot be held liable for failing to notify Mr. Johnson of an event that had not yet occurred—that is, the conclusion of Litigation.

Mr. Johnson has, therefore, failed to show the claims were ripe at the time the Bankruptcy Court dismissed the action. He argues, without citing any caselaw, that "[t]he law does not require the guillotine to fall before allowing the condemned an opportunity to complain" and that "[Mr.] Johnson appropriately asked this Court to intervene before the blade fell." Appellant's Reply at 14, ECF No. 5. But these statements misconstrue the ripeness inquiry. Though ripeness may be satisfied by a future injury, that injury cannot be "dependent on future uncertainties." *Wild Va.*, 56 F.4th at 303 (quoting *Doe*, 713 F.3d at 758). As detailed in Section III.A., *supra*, Mr. Johnson has asked this Court to intervene while his injury is still dependent on future uncertainties, in that his liability has yet to be determined. Until Mr. Johnson's injury is not dependent on future uncertainties—that is, until the Litigation has concluded or the Panel has convened—the claims in the Second Amended Complaint are unfit for judicial review.

Finally, Mr. Johnson suggests that the Bankruptcy Court erred in not allowing him to conduct discovery into the Buckley Letter. Appellant's Br. at 28, ECF No. 3; Appellant's Reply at 11, ECF No. 5. He specifically advances the need for two depositions, one of Mr. Johnson and the other of Mr. Buckley, to explain "the purpose and meanings of the exchange of correspondence between them." Appellant's Reply at 11, ECF No. 5. However, he points to no factual

developments that warrant additional discovery or bear on the current jurisdictional question before the Court.

Nor is discovery warranted where, as here, his allegation that the Litigation had concluded was wholly unsubstantial. "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3d at 193 (quoting *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)). However, where jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous," a trial court should dismiss the claims under Rule 12(b)(1). *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). This Court concludes that Mr. Johnson's jurisdictional allegations are wholly unsubstantial—while at best he points out an issue of fact concerning the intent behind the correspondences, this issue of fact is immaterial to the issue of jurisdiction. Neither this Court nor the Bankruptcy Court is required to take Mr. Johnson's assertion that Litigation had concluded at face value, especially in light of evidence to the contrary. Discovery as to the factual issue, therefore, remains unwarranted until Mr. Johnson's injury is no longer contingent on future uncertainties.

C.  <u>Given its holding as to the lack of ripeness, the Bankruptcy Court did not err by failing to address Mr. Johnson's waiver and estoppel claims.</u>

Next, Mr. Johnson contends that the Bankruptcy Court erred by failing to address his waiver and estoppel claims. Appellant's Br. at 29, ECF No. 3. In Count V of the Second Amended Complaint, Mr. Johnson alleges that he reasonably relied upon the Burkley Letter "being the Bank's final determination regarding the Litigation, his cooperation, [and] the amount of the Judgment." Second Am. Compl. ¶ 55, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 21.

Because he relied on this alleged determination, Mr. Johnson asks that the Court determine Peoples Bank 1) is estopped from requesting additional cooperation and taking a position on the Litigation that is inconsistent with the Buckley Letter, and 2) has waived any right to request additional cooperation. *Id.* ¶¶ 56-58. He further claims that the Bankruptcy Court's failure to address these issues—as evidenced by the fact that "waiver" and "estoppel" do not appear in the Order on the Motion to Dismiss—means the Order should be set aside. Appellant's Reply at 15, ECF No. 5.

While the parties spend much time debating the relative merits of the waiver and estoppel claims, neither spends much, if any, time on the question of why this Court and the Bankruptcy Court should reach them at all. Appellant's Br. at 30-33, ECF No. 3; Appellee's Br. at 28-36, ECF No. 4. As the Supreme Court has recently reiterated, where a court lacks subject matter jurisdiction, it can only issue a ruling on the merits when "pleading a claim and pleading jurisdiction entirely overlap." *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). That is not the case here. Neither the accounting, the Complete Cooperation, or the waiver and estoppel issues entirely overlap with the instant jurisdictional issue, such that it is appropriate for the Court to rule on their merits. It does not matter, therefore, that the Bankruptcy Court failed to explicitly reject the waiver and estoppel claims—it did not need to in light of its holding as to the lack of ripeness. It is similarly inappropriate for this Court to address the merits of Mr. Johnson's claims at this time.

D. <u>The Bankruptcy Court had authority to enter the judgment pursuant to Article III of the Constitution.</u>

Finally, Mr. Johnson argues that the Bankruptcy Court lacked authority to enter judgment under Article III of the Constitution. Appellant's Br. at 33, ECF No. 3. Pursuant to 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11." District courts may then refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy judges in that district. 28 U.S.C. § 157(a). Bankruptcy courts are authorized to adjudicate and enter final judgments in "core proceedings"— that is, proceedings that "arise under" Title 11 or "arise in" Title 11 cases. *Stern v. Marshall*, 564 U.S. 462, 474-75 (2011) (quoting 28 U.S.C. § 157(b)(1)). A party may appeal to the district court following a bankruptcy court's final order in a core proceeding, and the district court must review the bankruptcy court's order under traditional appellate standards. *Id.*

A bankruptcy court may also hear non-core proceedings—that is, proceedings "related to" a case under Title 11. 28 U.S.C. § 157(c)(1). In non-core proceedings, however, bankruptcy courts lack statutory authority to enter a final judgment. *MDC Innovations, LLC v. Hall*, 726 F. App'x 168, 171 (4th Cir. 2018). Instead, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court, which then reviews any objections *de novo* and enters a final order or judgment in those proceedings. 28 U.S.C. § 157(c)(1). In its Order granting Peoples Bank's motion to dismiss, the Bankruptcy Court found that the proceeding was a non-core one. Order on Mot. to Dismiss ¶ 1, ECF No. 1-1.

Mr. Johnson first points to this Court's referral of the matter to the Bankruptcy Court—he alleges that the Memorandum Opinion and Order failed to address whether 1) Mr. Johnson's claims were "arising in or related to cases under Title 11," 2) the claims comprised core or non-core proceedings, and 3) the Bankruptcy Court had authority to make a final decision, or if it was to make proposed findings of fact and conclusions of law. Appellant's Br. at 33, ECF No. 3. Mr. Johnson is correct that this Court made no express determination as to which prong of 28 U.S.C. §§ 1334 and 157 the issue falls. Rather, in referring the matter to the Bankruptcy Court, this Court

cited *Local Loan v. Hunt*, 292 U.S. 234, 239 (1934), for the proposition that "[b]ankruptcy courts

. . . have ancillary jurisdiction to interpret and enforce their own prior orders." *Johnson v. Peoples*

*Bank*, No. 3:20-00781, ECF No. 29 at 4.

Mr. Johnson also, however, takes issue with the applicability of *Local Loan*, arguing that

because there were no bankruptcy courts at the time the decision was rendered, the case is

immaterial in determining whether a bankruptcy court may assert ancillary jurisdiction.

Appellant's Br. at 34, ECF No. 3. He advocates that the Court should refer to *In re Conseco, Inc.*,

305 B.R. 281 (Bankr. N.D. Ill. 2004), instead. Appellant's Br. at 34, ECF No. 3. There, a

bankruptcy court held that exercise of ancillary jurisdiction was not warranted even where the

bankruptcy court had approved a settlement agreement releasing certain third parties. *In re*

*Conseco*, 305 B.R. at 286. The *In re Conseco* court held that pursuant to the terms of 28 U.S.C. §

157(a) and the Seventh Circuit's decision in *Zerand-Bernap Group., Inc. v. Cox*, 23 F.3d 159 (7th

Cir. 1994), bankruptcy courts could only assert ancillary jurisdiction over issues that arise from,

arise in, or are related to a bankruptcy case. *In re Conseco*, 305 B.R. at 286. The order retaining

jurisdiction was, therefore, insufficient to confer jurisdiction, as "[a] court cannot write its own

jurisdictional ticket." *Id.* (quoting *Zerand-Bernal*, 23 F.3d at 164).

Peoples Bank responds that though *Local Loan* predated the Bankruptcy Code, it has been

almost universally adopted in the bankruptcy context since. Appellee's Br. at 37, ECF No. 4.

Namely, in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), the Supreme Court expressly

held that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior

orders," especially where it "explicitly retained jurisdiction to enforce its injunctions" in the

applicable orders. *Id.* at 151 (citing *Local Loan*, 292 U.S. at 239). Similarly, here, the Stipulation

provides that the "Bankruptcy Court shall retain jurisdiction to determine any dispute over the

interpretation and enforcement of the provisions of this Order." Stipulation ¶ 25, ECF No. 2-3. Mr. Johnson responds that *Travelers Indemnity* is distinguishable because there, the Supreme Court's holding centered more on *res judicata* than the jurisdictional limits of bankruptcy courts. Appellee's Reply at 18, ECF No. 5.

The Court agrees with Peoples Bank. As this Court previously held in this case, the Bankruptcy Court can appropriately exercise jurisdiction to enforce and interpret issues arising from the Stipulation and the Consent Judgment. *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 29. Private settlement agreements are generally only enforceable when "the obligation to comply with its terms is 'made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280-81 (4th Cir. 2002) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). Here, both scenarios are applicable—there was a separate provision retaining jurisdiction, and the order incorporated the terms of the settlement agreement. Not only did the parties expressly agree that the Bankruptcy Court would retain jurisdiction over any disputes concerning the interpretation or enforcement of the Consent Judgment, Stipulation ¶ 25, ECF No. 2-3, the Consent Judgment also incorporated the terms of the Stipulation by reference, Consent Judgment, *Johnson v. Peoples Bank*, No. 3:20-00781, ECF No. 2-4. The terms of the Stipulation, therefore, are enforceable by the Bankruptcy Court.

*Travelers Indemnity* further supports this conclusion—there, the bankruptcy court issued an Insurance Settlement Order, which was subsequently incorporated into the Confirmation Order. 557 U.S. at 142. More than a decade later, one of the parties sought declaratory relief to determine whether the Insurance Settlement Order and Confirmation Order barred certain claims, and the

bankruptcy court found that the claims were indeed barred. *Id.* at 145. Upon review, the Supreme Court held that the bankruptcy court had continuing jurisdiction to interpret its own orders, especially because it had explicitly retained such jurisdiction in the applicable order. *Id.* at 150-151. Similarly, in this case, the Bankruptcy Court "plainly had jurisdiction to interpret and enforce its own prior orders." *Id.* at 151.

In doing so, the Bankruptcy Court did not "write its own jurisdictional ticket" by retaining jurisdiction it never had. *In re Conseco*, 305 B.R. at 286; *see also Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663–64 (1st Cir. 2017) (quoting *U.S. Brass Corp. v. Travelers, Ins. Group*, 301 F.3d 296, 303 (5th Cir. 2002)) ("A retention of jurisdiction provision may not alter the fact that 'the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157.'"). While many courts have held that bankruptcy courts retain subject matter jurisdiction to interpret and enforce their own orders, few of them have specified the applicable jurisdictional category under 28 U.S.C. §§ 1334 and 157—that is, whether the issue arises in, arises from, or is related to a case under Title 11. *See, e.g.*, *In re Lightning Techs., Inc.*, 647 B.R. 76, 91–92 (Bankr. E.D. Mich. 2022) (listing cases); *Travelers Indem. Co.*, 557 U.S. at 151 (holding that the bankruptcy court retained jurisdiction without specifying which prong or prongs of 28 U.S.C. § 1334 applied)

Other courts, however, have held that a bankruptcy court interpreting and enforcing its prior orders constitutes a core proceeding that "arises in" a case under Title 11. *In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) ("A bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction."); *Tenet Healthsystem Philadelphia, Inc. v. Nat'l. Union of Hosp. and Health Care Emps.*, 383 F.3d 169,

176 (3d Cir. 2004) (holding that a proceeding was a core proceeding "because it required the [bankruptcy] court to interpret and give effect to its previous sale orders"). *In re Nu-Cast Step & Supply, Inc.*, 639 B.R. 440, 440, 448 (Bankr. E.D. Mich. 2021) (holding that the bankruptcy court had "arising in" jurisdiction to interpret and enforce the court's "stipulated order granting the [d]ebtor's motion to sell substantially all of its assets"); *In re Lightning Techs., Inc.*, 647 B.R. at 91–92 ("The Court concludes that when it is called upon to enforce its own orders . . . there is, at least, 'arising in' jurisdiction under § 1334(b)"). This Court would hold similarly—where, as here, a bankruptcy court is called upon to enforce its own order, there is at least "arising in" jurisdiction pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court, therefore, had jurisdiction to hear this case both pursuant to *Travelers Indemnity Co.* and 28 U.S.C. §§ 1334 and 157.

## CONCLUSION

For the reasons above, the Court **AFFIRMS** the decision of the Bankruptcy Court and **DISMISSES** this action without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). Def.'s Notice of Appeal and Statement of Election, ECF No. 1.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:    August 17, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-25-